UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARCHELL FELICIA GRUNDY,

     Plaintiff,                        CIVIL ACTION NO. 14-CV-11745

vs.                                DISTRICT JUDGE BERNARD A. FRIEDMAN

                                       MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Felicia Grundy seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Response to Defendant's Motion. (Docket no. 14.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

### I.    Recommendation

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 13) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

### II.    Procedural History

1

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of May 25, 2011, alleging that she had been disabled since March 3, 2011, due to fibromyalgia, depression, and anxiety. (TR 178; *see* TR 13, 15.) The Social Security Administration denied benefits. (*See* TR 13.) Plaintiff requested a *de novo* hearing, which was held on November 29, 2012, before Administrative Law Judge (ALJ) Patrick J. MacLean, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 13-27.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III.  Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony

#### A.  Plaintiff's Testimony and Medical Record

Plaintiff (docket no. 11 at 5-13), Defendant (docket no. 13 at 4-14), and the ALJ (TR 20-25) each set out a detailed factual recitation with regard to Plaintiff's medical record and hearing testimony. There are no material inconsistencies between these three accounts of the record; therefore, the undersigned will incorporate these factual recitations by reference. Nevertheless, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

#### B.  The Vocational Expert

Although the ALJ relied on the testimony of the VE in reaching his conclusion that Plaintiff was "not disabled," Plaintiff acknowledges that "[T]he [VE] was provided a hypothetical question essentially consistent with the ALJ's RFC assessment." (Docket no. 11 at 13.) The VE

testified that Plaintiff could perform jobs, including inspecting, testing, sorting; assembling; and packaging. (*See id.*) Thus, because Plaintiff does not challenge the VE's testimony or the ALJ's hypothetical questions to the VE, further discussion of the VE's testimony is not relevant with regard to the Motions currently pending before the Court.

## IV.     Administrative Law Judge's Determination

The ALJ found that Plaintiff met the insured status requirements of the Act through March 30, 2015; that she had not engaged in substantial gainful activity since March 3, 2011, her alleged onset date; and that she suffered from severe fibromyalgia, major depressive disorder, and bipolar disorder. (TR 15-16.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 16-18.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff could perform sedentary work with the following additional limitations:

> [The] claimant can lift up to 10 pounds occasionally, stand or walk for approximately two hours per 8-hour workday and sit for approximately six hours per 8-hour workday, with normal breaks. The claimant is unable to climb ladders, ropes, or scaffolds, but can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps or stairs. The claimant should avoid all use of moving machinery and exposure to unprotected heights. The claimant is limited to work that involves simple, routine, and repetitive tasks with only occasional interaction with the public, supervisors, and coworkers.

(TR 18-26.)

The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing work as an inspector, tester, and sorter; an assembler; or a packager. (TR 26-27.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from March 3, 2011, through the date of his decision. (TR 27.)

## V.     Law and Analysis

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.   Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

5

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or, in the alternative, remanded because (1) "[t]he ALJ's analysis of plaintiff's fibromyalgia is legally and factually unsupported, and is logically infirm;" and (2) "[t]he ALJ's analysis of plaintiff's mental impairment is also unsupported by the requisite substantial evidence." (Docket on. 11 at 15-22.)

### 1. Plaintiff's Fibromyalgia

Plaintiff's argument with regard to her fibromyalgia is two-fold. First, Plaintiff argues that the ALJ's findings are internally inconsistent because he found that she suffered from severe fibromyalgia but then questioned the findings of Dr. John Floreno, her treating physician, with regard to the same. (Docket no. 11 at 15-17.) Defendant contends that if there is any error in the ALJ's discussion with regard to the existence of Plaintiff's fibromyalgia, such an error is harmless because notwithstanding the ALJ's "peripheral discussion of the serious flaws in Dr. Floreno's clinical approach," the ALJ ultimately accepted the diagnosis. (Docket no. 13 at 19-20.) The undersigned agrees with Defendant.

As Plaintiff notes, the ALJ found that she suffered from severe fibromyalgia. (TR 16.) Thus, the ALJ acknowledged that Plaintiff suffered from fibromyalgia and that her fibromyalgia

6

caused "more than minimal limitation in [her] ability to perform basic work activities." (*Id.*) But in discussing his findings with regard to Plaintiff's RFC, the ALJ wrote as follows:

> [Dr. Floreno's] notes indicate a diagnosis of fibromyalgia, yet contain no test results regarding at least 11 positive tender points on physical examination which "must be found bilaterally . . . and above and below the waist;" a history of widespread pain in all quadrants of the body; and evidence that other disorders that could cause the symptoms or signs were excluded. There are also no reports of repeated manifestations of six or more fibromyalgia symptoms, signs or co-occurring conditions and evidence that other disorders that could cause those symptoms, signs, or co-occurring conditions were excluded.

(TR 20 (citing SSR-12-2p[1]).) Plaintiff argues that the ALJ's finding was error. Nevertheless, even having found that Dr. Floreno's notes did not objectively support Plaintiff's claims, the ALJ adopted Dr. Floreno's diagnosis and found that Plaintiff had severe fibromyalgia. The ALJ merely considered the supportability of this diagnosis when determining the extent to which she was physically limited based on her allegations of pain.

In that light, Plaintiff broadly argues that the ALJ "erred in discounting [the effects of her fibromyalgia] for lack of objective medical evidence." (*Id.*) But the ALJ relied on more than the lack of objective medical evidence in determining that Plaintiff's fibromyalgia was not as limiting as she alleged. The ALJ noted that in 2011, Dr. Floreno examined Plaintiff and found that she had "fibromyalgia with upper back pain with right and left arm involvement." (TR 21.) Dr. Floreno opined that Plaintiff's "pain 'limits her on occasion'" and that it "'may' prevent her from working her normal work schedule." (TR 21.) Later that year, he found that Plaintiff's fibromyalgia "'severely limits [her] ability to walk.'" (TR 21.) The ALJ noted that Dr. Floreno's opinion, in

---

[1] SSR 12-2p instructs ALJ's to evaluate whether an individual has fibromyalgia by considering, among other factors, whether an individual has either (1) "at least 11 positive tender points on physical examination[, which] must be found bilaterally . . . both above and below the waist," or (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions." *See* SSR 12-2P, 2012 WL 3104869, at \*3 (July 5, 2012).

7

addition to being unsupported by the objective evidence discussed above, was "vague, ambiguous, and d[id] not contain a function-by-function analysis of the claimant's physical capabilities." (TR 22.) Moreover, "at the time [the opinions were] authored, the claimant reported she was working eight hours a day, seven days a week as her grandmother's caregiver." (TR 22.) Nevertheless, in light of Plaintiff's fibromyalgia, the ALJ significantly limited Plaintiff's physical capabilities in her RFC. Therefore, even though the evidence may support the opposite conclusion, and even if the Court would find differently, there is substantial evidence to support the ALJ's opinion.

### 2. Plaintiff's Mental Impairments

Plaintiff asserts that the ALJ "created his own determination as to plaintiff's [mental] limitations, unsupported by *any* medical evidence." (Docket no. 11 at 18 (emphasis in original).) She asserts that the ALJ erred when he (1) failed to assign a weight to the opinion of Dr. Shah, who completed a State psychiatric examination report on March 14, 2012; (2) discounted Dr. Floreno's opinion with regard to her mental limitations; (3) discounted the opinion of Dr. Terrence Mills, a State Agency consulting psychologist; and (4) found Plaintiff's complaints less than wholly credible. (*Id.* at 18-21.)

#### i. Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or

8

non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL

9

374188, at *4. Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

With regard to Dr. Floreno's opinion, Plaintiff asserts that his impressions regarding Plaintiff's mental impairments "should not have been so handily discarded" merely because Dr. Floreno is not a psychiatric specialist. (Docket no. 11 at 19.) The ALJ did note that Dr.

10

Floreno's opinion was "outside the doctor's area of expertise," but he also explained that the opinion was "inconsistent with the treatment notes from the psychiatrist" and that "[t]he opinion is also internally inconsistent."  (TR 24.)   The ALJ explained that Dr. Floreno found that Plaintiff had "moderate limitation in the ability to understand and remember one to two-step instructions" but had "no significant limitation in understanding and remembering detailed instructions."  (TR 24.)   Moreover, the ALJ determined that Dr. Floreno's opinion was a "standard check-the-box questionnaire with no explanation" and that such a form is "entitled to little weight where the opinion is without any explanation in the form of a narrative."  (TR 24.)   Plaintiff's argument fails to address these additional bases for the ALJ's finding.

With regard to Dr. Shah's report, Defendant notes that Dr. Shah examined Plaintiff at Dr. Floreno's request, not at the state's request; therefore, even though Dr. Shah filled out a DHS form, he was not functioning as a state-examining physician.  (*See* docket no. 13 at 23.)   More importantly, though, as Defendant also notes, Dr. Shah did not offer an opinion with regard to Plaintiff's functional limitations.  (*See* TR 289-90.)   While Dr. Shah examined Plaintiff, his report is limited to his observations with regard to Plaintiff's status and his diagnoses.  With regard to functional limitations, Dr. Shah simply wrote "as written" on the report.  (TR 290.) Thus, the ALJ did not err when he "did not indicate whether he was giving [Dr. Shah's] opinions any weight or not."

Dr. Mills's opinion is similarly limited, although he did find that Plaintiff "may have difficulty maintaining standards of behavior and safety issues due to her medical issues and perhaps her depressive episodes."  (TR 271.)   Dr. Mills also noted, however, that "[p]erhaps psychological testing would give insight into her strengths and limitations."  (TR 271.)   Thus,

Dr. Mills qualified his own equivocal finding by indicating that further testing may help identify Plaintiff's limitations. Nevertheless, the ALJ gave limited weight to Dr. Mills's opinion and limited Plaintiff to "work that involves simple, routine, and repetitive tasks with only occasional interaction with the public, supervisors, and coworkers." (TR 18, 23.) Moreover, the ALJ found that Dr. Mills's opinion lacked supporting objective evidence; that it was inconsistent with Dr. Shah's notes; and that although Dr. Mills diagnosed Plaintiff with panic attacks, Plaintiff's record contained "little or no reports of panic attacks." (TR 23.) Plaintiff asserts that a lack of objective evidence is insufficient to support that ALJ's finding, but the ALJ did not rely solely on a lack of objective evidence. And to the extent that Plaintiff challenges as contradictory the ALJ's note that Dr. Mills's findings are "inconsistent with the treatments notes and findings of Dr. Shah" where the ALJ found earlier that Dr. Shah's report contained "no treatment notes that corroborat[d his] report," Plaintiff's argument is unpersuasive. The ALJ found that Dr. Shah's report, which included diagnoses and impressions from his first meeting with Plaintiff, did not contain any treatment notes to corroborate his findings. He then noted that Dr. Mills's opinion conflicted with the findings in Dr. Shah's report. Such a finding is not a contradictory.

### ii. Credibility

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case

record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff was not wholly credible for the following reasons:

- "The record does not demonstrate the significantly limited range of motion, muscle weakness, muscle atrophy, motor weakness, sensation loss, reflex abnormalities, or neurological deficits that are associated with intense and disabling pain or neuropathy. There are scant objective findings to corroborate the diagnosis of fibromyalgia or the claimant's statements." And although claimant reported muscle aches, there were "no clinical findings by the physician of trigger points."

13

- Plaintiff alleges that she "suffers from severe symptoms of depression and anxiety," and there is a "reasonable expectation that the claimant [would] seek examination and treatment." Nevertheless, she "sought little or no treatment," "refused a referral to a psychologies," and did not follow up with Dr. Shah after completion of her disability paperwork."

- Plaintiff's "statements are significantly inconsistent with the overall medical record;" and she "provided varying information regarding her medical history, the nature and intensity of her symptoms, functional abilities, and compliance with recommended treatment."

- Plaintiff's "report of limited functional abilities . . . contrasts sharply with the reported ability to work eight hours a day, seven days a week performing personal care duties, cooking, cleaning, and dispensing medication to another."

- Plaintiff "reported she needed assistance with her personal care, but then reported she was able to perform her grooming and hygiene."

(TR 24-25.) Plaintiff argues that a lack of objective evidence regarding her complaints of mental limitations is an insufficient rationale for finding a lack of credibility, and she argues that she did treat for her mental conditions with her primary care physician. (Docket no. 11 at 20.) As noted, however, the ALJ's credibility determination was based on more than a lack of sufficient evidence and a lack of treatment. The undersigned finds no reason to disturb the ALJ's finding.

## VI. Conclusion

For the reasons stated herein, Plaintiff's Motion for Summary Judgment [11] should be DENIED and Defendant's Motion for Summary Judgment [13] should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 6, 2015  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: May 6, 2015  s/ Lisa C. Bartlett
Case Manager